Rowena Santos (SBN 210185)
rsantos@slpattorney.com
Rodney Gi (SBN 268687)
rgi@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
A PROFESSIONAL CORPORATION
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
**EcoTech Law Group, P.C.**
5 Third St. Ste. 700
San Francisco, CA 94103
Telephone: (415) 503-9194
Facsimile: (415) 651-8639

Attorneys for Plaintiff ABRAHAM FOROUZAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ABRAHAM FOROUZAN,<br><br>            Plaintiff,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC et al.,<br><br>            Defendants. | Case No.: 2:17-cv-3875-DMG-GJS<br><br>[Assigned to the Hon. Dolly M. Gee]<br><br>**OPPOSITION TO BMW OF NORTH AMERICA'S MOTION *IN LIMINE* TO EXCLUDE IMPROPER LEGAL OPINIIONS UNDER DAUBERT**<br><br>Hearing: May 29, 2018, 2:00 p.m.<br>Trial Date: June 26, 2018 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     RELEVANT BACKGROUND ...................................................................2

        A.   Plaintiff's Lease ...............................................................................2

        B.   Plaintiff's Repair History .................................................................2

        C.   Plaintiff's Pre-Litigation Repair Request.........................................5

        D.   Plaintiff's Post-Litigation Vehicle Inspections ...............................5

III.    ARGUMENT ..............................................................................................6

        A.   Mr. Calef Is Qualified To Testify As To His Expert
             Opinions ............................................................................................6

        B.   Mr. Calef's Expert Opinions Are Based on the Record of
             the Case and Sound Methodology .....................................................9

        C.   Mr. Calef's Opinions Are Relevant and Reliable .............................13

        D.   BMW's Motion *In Limine* Goes To The Weight, Not The
             Admissibility, Of Mr. Calef's Opinions ...........................................16

IV.     CONCLUSION ...........................................................................................17

i

1

## TABLE OF AUTHORITIES

2

3  **CASES**

4  *Beech Aircraft Corp. v. Rainey* , 488 U.S. 153 (1988)......................................12

5  *Caldwell v. Cont'l Am. Ins. Co. (In re Caldwell)*, 350 B.R. 182

6      (Bankr. E.D. Pa. 2006) ...............................................................................10

7  *Claar v. Burlington Northern Railroad Company*, 29 F.3d 499 (9th

8      Cir. 1994 ) ...................................................................................................13

9  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)...................10, 11, 12, 14

10  *E. Tenn. Natural Gas Co. v 7.74 Acres*, 2007 U.S. App. LEXIS

11      11991 (4th Cir. 2007) ..................................................................................14

12  *Figueroa v Boston Sci. Corp.*, 254 F. Supp. 2d 361 (S.D.N.Y. 2003) ...............18

13  *Golod v. Hoffman La Roche*, 964 F. Supp. 841 (S.D.N.Y. 1997) .......................18

14  *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757 (1981)..............................11

15  *Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634 (W.D. Tex. 2006) ..............10

16  *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW,

17      2009 U.S. Dist. LEXIS 134029 (N.D. Cal. Jan. 27, 2009) .............................18

18  *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112 (1995).....................14, 16

19  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).........................................11

20  *Lundy v. Ford Motor Company*, 104 Cal. Rptr. 2d 545 (2001).........................17

21  *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (2005) .......................16

22  *Milicevic v. Mercedes-Benz USA, LLC*, 256 F.Supp.2d 1168 (D. Nev.

23      2003) ...........................................................................................................16

24  *Moran v. Ford Motor Co.*, 476 F.2d 289 (8th Cir. 1973).....................................6

25  *Olson v. Ford Motor Company*. 481 F.3d 619 (8th Cir. 2007) ............................8

26  *Oregel v. American Isuzu Motors, Inc.* 90 Cal. App. 4th 1094 (2001) ...........1, 11

27  *Perez v. Seafood Peddler of San Rafael, Inc.*, No. 12-cv-00116-

28

**OPPOSITION TO BMW'S MOTION IN LIMINE**

WHO, 2014 U.S. Dist. LEXIS 84575 (N.D. Cal. June 20, 2014) .................... 18

*Sitrick v. Dreamworks, LLC*, No. CV 03-4265-SVW (AJWx), 2006

   U.S. Dist. LEXIS 97312 (C.D. Cal. July 20, 2006) ........................................ 17

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457 (S.D.N.Y. 2007) ............... 18

*United States v. Gardner*, 211 F.3d 1049 (7th Cir. Ill. 2000) ............................ 10

*United States v. Soulard*, 730 F.2d 1292 (9th Cir. 1984) ................................... 18

*West v. Johnson & Johnson Prod., Inc.*, 174 Cal. App. 3d 831 (1985) .............. 11

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) ...................... 12

## STATUTES

Fed. R. Evid. 401 ............................................................................................ 14

Fed. R. Evid. 702 ........................................................................................ 9, 14

Fed. R. Evid. 703 ............................................................................................ 10

**OPPOSITION TO BMW'S MOTION IN LIMINE**

## I.     INTRODUCTION

BMW bemoans the opinions of Plaintiff's expert, Mr. Dan Calef, which despite BMW's protests to the contrary, are relevant, reliable, and admissible. Nevertheless, BMW presents a self-serving caricature of Mr. Calef's opinions, report, and testimony. To make its otherwise untenable arguments, BMW ignores otherwise key pieces of evidence and information, including that Mr. Calef is entitled to base his opinions on his review of the repair record, vehicle inspections, Plaintiff's deposition testimony, and other information he has been provided—he does not need drive the Subject Vehicle (or dismantle it and run tests on it) to offer an expert opinion on, *inter alia*, the existence of defects in the Subject Vehicle and BMW's failure to repair them to conform the Subject Vehicle to the applicable warranties.

Moreover, BMW confuses matters by mischaracterizing Mr. Calef's role as a scientific expert who should be offering opinions grounded in the scientific method. Not so. Mr. Calef is, among other things, an expert on the diagnosis of the existence of defects, not on the underlying causes of the defects.[1] As such, his testimony and opinions are not grounded in the scientific method, and BMW's critiques to this effect are inapposite.

Ultimately, Mr. Calef is an eminently qualified consultant in the industry who has testified as an expert in hundreds of Song-Beverly matters, and based on these and his review of the facts then available to him, has produced a relevant and reliable report here that should be admitted.

And to the extent BMW may have implicated issues with Mr. Calef's expert report, these do not render Mr. Calef's report and opinions inadmissible; rather,

---

[1] Indeed, proving the cause of a defect is not even required to succeed on a Song-Beverly claim.  *See Oregel v. American Isuzu Motors, Inc.* 90 Cal. App. 4th 1094, 1102 n.8 (2001) (explaining that Song-Beverly does not require a consumer to prove the cause of the defect or failure, only that the consumer good "did not conform to the express warranty.").

1

**OPPOSITION TO BMW'S MOTION IN LIMINE**

these go to the *weight* afforded Mr. Calef's report and opinions. BMW will be given the opportunity, at trial, to cross-examine Mr. Calef before the jury on his opinions.

Accordingly, BMW's motion should be denied in its entirety.

## II.   RELEVANT BACKGROUND

### A.   Plaintiff's Lease

On October 19, 2015, Plaintiff leased the subject 2015 BMW Z4 sDrive 35i (hereinafter "the vehicle") with 5,357 miles on the odometer, from Beverly Hills BMW. The lease was made for a gross capitalized cost of $56,582.70 and is set to expire on October 19, 2018.  The lease requires Plaintiff to make a down payment of $2,500.00, monthly payments of $565.44 for 36 months, and has an option to purchase the vehicle at the end of the lease for $41,343.60.

### B.   Plaintiff's Repair History

Thereafter, Plaintiff began a reoccurring sequence of repair visits for the subject BMW relating to the suspension and transmission.  On October 26, 2015, with 5,533 miles on the odometer, Plaintiff took the vehicle in for, among other things, concerns that there is a rattle noise from the left rear of the vehicle and there is a metal noise from under the vehicle during acceleration. The dealership was unable to duplicate the rattle noise at the rear of the vehicle but verified Plaintiff's complaint of a metal noise on acceleration. The dealership's technician found the drive shaft was faulty and ordered a replacement. The vehicle was at the dealership for two (2) days.

On November 4, 2015, with 5,912 miles on the odometer, Plaintiff returned to Defendant's dealership because the metal noise from under the vehicle was still present, the rattle noise at the read of the vehicle was still present, and a message stating "Transmission Range N" had come on display. The dealership found the left rear strut was loose and causing a rattle. The rear strut was torqued. The

**OPPOSITION TO BMW'S MOTION IN LIMINE**

dealership did nothing to address the metal noise from under the vehicle because the specially ordered part was still not available. Similarly, the technician found a fault code associated with the displayed warning light but cleared it without performing any repairs, noting it was a "one time fault." The vehicle was in the shop for four (4) days.

On November 27, 2015, with 6,761 miles on the odometer, Plaintiff returned to Defendant's dealership with several ongoing problems: 1) a rattle noise at the rear of the vehicle intermittently over rough roads, 2) a violent rattle at the front end, 3) a clunking noise under the vehicle, 4) the transmission range displays all the time, 5) there is a delay on acceleration, and 6) the car jerks approximately 30% of the time when removing foot from the gas pedal. The dealership advised that it could not duplicate Plaintiff's rattling complaints and did not take any remedial measures to address those complaints. The dealership again verified that the driveshaft was at fault and replaced it on this visit with the specially ordered part. The dealership also determined that fault code 5062 was stored, indicating that the parking lock cable unit was faulty. The parking lock cable unit was also replaced. Nonetheless, the dealership went on to conclude that Plaintiff's jerking and acceleration complaints could not be duplicated; no repairs were performed in an attempt to address those complaints. The vehicle was in the shop for eight (8) days.

On February 22, 2016, with 8,644 miles on the odometer, Plaintiff again presented the vehicle to Defendant's repair facility because the rattle noise at the rear of the vehicle remained present, the chassis stabilization warning light was now on display, and the tire pressure warning light had come on. Defendant's dealership technicians were not able to duplicate the rattle complaint. The technicians found fault code 5E9C stored in the DSC sensor, related to the

3

**OPPOSITION TO BMW'S MOTION IN LIMINE**

stabilization warning light. The dealership nonetheless determined that the sensor was working as designed. The vehicle was in the shop for 17 days.

On June 28, 2016, with 10,898 miles on the odometer, Plaintiff presented the vehicle to Defendant's dealership because the vehicle loses acceleration. The technician found "some differences at times when engaging and disengaging the throttle" but found no relevant fault codes stores and ultimately concluded the he could not duplicate the complaint. No repairs were performed. The vehicle was in the shop for nine (9) days.

On February 2, 2017 Plaintiff presented the vehicle to Defendant's dealership with 14,246 miles on the odometer, because a strange noise continues to come from the rear of the vehicle when driving over surfaces that are not smooth and because the vehicle still does not register when Plaintiff presses on the gas pedal. The technician did not find any suspension problems but found that the convertible top seal was dry; the top was lubricated. The technician was not able to duplicate Plaintiff's concern regarding a delayed acceleration response but concluded that his concerns may have been caused by the loose floor mat. The floor mat's Velcro was re-secured. The vehicle was in the shop for two (2) days.

On December 7, 2017, with 19,793 miles on the vehicle's odometer, Defendant BMW performed a vehicle inspection. An oil leak and transmission warning light were discovered at the inspection (see below for further details).

On December 26, 2017, with 20,024 miles on the odometer, Plaintiff returned to Defendant's dealership. The dealership found oil leaking from the rear of the oil pan. The oil pan gasket was replaced. The vehicle was in the shop for 11 days.

On April 6, 2018, with 21,325 miles on the odometer, Defendant BMW performed a second vehicle inspection. The transmission warning light remained on (see below for further details).

4

**OPPOSITION TO BMW'S MOTION IN LIMINE**

### C.   Plaintiff's Pre-Litigation Repair Request

On January 25, 2017, after having to repeatedly present the vehicle to Defendant's dealership for ongoing problems with the vehicle, to no avail, Plaintiff contacted BMW directly to inform BMW of the problems he had experienced and request a refund or replacement. Specifically, BMW was informed that the vehicle had been presented to the dealership "for repeat noise issues and hesitation upon acceleration . . . within weeks of purchase for a major repair . . . [the] vehicle has been in and out of dealer constantly. [He is] scared by noise that vehicle makes. [He] tried to show [the] issue to [the] dealer but it is difficult to reproduce. [There is a] clicking noise when going over potholes. [The] struts were adjusted but noise kept recurring. [W]hen hitting gas pedal, there will be a pause before engine revs, but hasn't been able to reproduce issue at dealer."

On or about February 8, 2017, Defendant BMW denied Plaintiff's request, instead offering Plaintiff $2,500 toward his next purchase of a BMW.

### D.   Plaintiff's Post-Litigation Vehicle Inspections

On December 7, 2017, with 19,793 miles on the vehicle's odometer, Defendant BMW performed a vehicle inspection via its expert technician Mike Rice. Mike Rice determined that the vehicle had an oil leak and the "Transmission in Neutral" message was illuminated.

On April 6, 2018, with 21,325 miles on the vehicle's odometer, Defendant BMW performed a second vehicle inspection via its expert technician Jose Grijalva. Jose Grijalva determined that the "Transmission Range N" message remained illuminated with fault 5062 for the parking lock hook stored. It should be noted that the vehicle was at Defendant's dealership for repairs for 11 days following the first inspection. Nonetheless, BMW's dealership made no attempt to resolve this repeated problem.

**OPPOSITION TO BMW'S MOTION IN LIMINE**

III.   **ARGUMENT**

   **A.   Mr. Calef Is Qualified To Testify As To His Expert Opinions**

A witness's practical experience may be the basis of qualification of an expert. *See Moran v. Ford Motor Co.*, 476 F.2d 289, 290-91 (8th Cir. 1973) (in breach of warranty action, holding trial court abused its discretion in excluding Plaintiffs expert's opinions, despite Plaintiffs expert's eighteen years as an owner and operator of an auto repair shop providing more than sufficient qualifications for the proposed opinions). BMW focuses only on the fact that Mr. Calef is not a laboratory scientist and that the diagnostics expertise he offers is not grounded in experimental design and the scientific method (discussed further below), while ultimately ignoring the wealth of experience Mr. Calef brings to the Court regarding automotive theory, diagnosis, repair, and maintenance.

Mr. Calef has been actively working in the automobile diagnostic and mechanics industry since 1976. He has held positions as a technician in various dealerships and facilities, including his own. He has been an instructor in automotive theory, maintenance, diagnosis, and repair. He was the owner and operator of a "mobile mechanic service" that offered a full range of automotive repair services. He was an Assistant Parts and Service Manager for a nation-wide network of used car dealerships and regularly assisted their technicians with diagnostics. He has been certified as a "Master Technician" and holds various other relevant certifications. He is currently both a Lemon Law consultant and owner of Independent Automotive Diagnostics, a consulting company that teaches the skills and theory necessary for diagnosis and repair of difficult concerns. Moreover, he has testified in well over 300 Lemon Law cases. (*See generally* Docket No. 42-1 at 10-21 [Dan Calef resume].)

In this case, Mr. Calef has based his opinions on, *inter alia*, his observations at two inspections of the Subject Vehicle, the warranty booklet for

**OPPOSITION TO BMW'S MOTION IN LIMINE**

the Subject Vehicle, the lease contract for the Subject Vehicle, the repair orders and invoices for the Subject Vehicle, the pleadings, written discovery and responses thereto, document productions, video recordings of the Subject Vehicle, photographs of the Subject Vehicle, and depositions of various party witnesses, including Plaintiff.  (*See* Docket No. 42-1 at 1-9 [Dan Calef Expert Report] and ¶¶ 1-13 (Data or Other Information Considered).)

Due to Mr. Calef's tremendous experience in the automotive industry, as well as the extensive review he has done as a retained consultant in this case, Mr. Calef is entitled to testify as to his opinions with respect to the Subject Vehicle based on review of these materials. Mr. Calef is an expert in diagnosing vehicles and determining whether or not a vehicle has been repaired. As part of his training and extensive background, Mr. Calef has the ability to look at repair orders and determine if a certain issue has ben properly diagnosed and/or repaired. Additionally, Mr. Calef can determine if the technicians followed the proper protocol in relation to a particular defect. As a result, Mr. Calef is an expert when it comes to determining how many visits are reasonable to remedy a vehicle's defect. It is up to the trier of fact to determine whether s/he agrees with Mr. Calef or not. However, for BMW to make this argument would obviously be self-serving.

Moreover, BMW has had the opportunity to flesh out Mr. Calef's knowledge and background at deposition, and moreover, will have the opportunity to cross-examine him at trial. It is Plaintiff's contention that Mr. Calef' testimony in this matter would certainly assist the trier of fact in understand the diagnostic issues implicated by this matter. The Court should allow Mr. Calef to testify and have the jury assess the weight and credibility of his opinions.[2]

---

[2] BMW inappropriately presents irrelevant evidence from the *Gray v. Mazda* matter to prejudice this Court from properly considering Mr. Calef's qualifications. (*See* MIL at 3:14-27.) BMW ignores the fact that Judge Selna's ruling was focused on the credibility of Mr. Calef as a witness in that case and as

7

BMW's reliance on the fact that Mr. Calef has no formal training in BMW vehicles or that he does not have information on how dealerships perform certain work is irrelevant to his qualifications as an expert witness. (*See* MIL at 8:14-16 ("Calef admits he has no actual training or experience specific to the Subject Vehicle, not does he have any information as to how the dealership performs its work.").) Mr. Calef concedes such is true. However, although Mr. Calef has not worked for a BMW dealership or worked for BMW of North America, Mr. Calef has been in the industry for over 40 years and has worked on several BMW vehicles, he has had training that focused largely on BMW vehicles (Declaration of Dara Tabesh ("Tabesh Decl.") Ex. 1 (Deposition Transcript of the May 4, 2018 Deposition of Dan Calef ("Calef Tr.")) at 86:25-87:5), and he has explained how his broader knowledge of vehicles allows him to perform his diagnostics as well as, if not better than, those who myopically focus all efforts on one vehicle type. (*See* Calef Tr. at 90:1-14.)

According to Defendant's logic, only a current or former employee of BWW, who has received training only in BMW vehicles, would be qualified to testify as an expert in a Lemon Law case against BMW; a clearly absurd notion in the adversarial nature of our judicial system. Mr. Calef's experience in automotive theory, diagnosis, repair, and mechanics is clearly established and he is well qualified testify as to his expert opinions in this matter.

---

to the weight he personally attributed to Mr. Calef's opinions. Indeed, the cited passage simply reflects the opinion of a single trier of fact in a bench trial. Finally, and most importantly, Judge Selna did not exclude Mr. Calef's testimony; nor did he disqualify him as an expert after he testified.

It also must be noted that Mr. Calef has testified or given depositions in over 300 cases as an expert witness and other judges have not expressed the same opinion as Judge Selna. Thus the credibility of Mr. Calef's opinions in one case is not grounds for disqualifying Mr. Calef as an expert in this matter. The proper avenue of challenging such credibility is "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Olson v. Ford Motor Company*. 481 F.3d 619, 626 (8th Cir. 2007).

**OPPOSITION TO BMW'S MOTION IN LIMINE**

**B.** **Mr. Calef's Expert Opinions Are Based on the Record of the Case and Sound Methodology**

Mr. Calef's expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Mr. Calef's expert testimony will also help the jury understand the nature of the defects with the subject vehicle, including the fact that the problems reported by Mr. Forouzan are attributable to BMW and its inability to conform the Subject Vehicle to the applicable warranties within a reasonable number of attempts. His testimony will also help the jury determine whether the defects with the vehicle were timely repaired and whether they substantially impair the use, value, or safety of the vehicle. Therefore, Mr. Calef should be permitted to provide expert testimony at trial. Fed. R. Evid. 702.

To the extent BMW contends that Mr. Calef's testimony should be excluded as unreliable under *Daubert* because, for example, Mr. Calef never test-drove the Subject Vehicle (MIL at 4:22), or because he relies in part on "Plaintiff's assertion that the problems are ongoing (MIL at 5:7), or because he replies on repair records (MIL at 5:13-14), it completely appropriate for Mr. Calef, as an expert, to rely on facts he has been made aware of—he need not personally observe them:

> An expert may base an opinion on facts or data in the case that ***the expert has been made aware of*** or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

9

**OPPOSITION TO BMW'S MOTION IN LIMINE**

Fed. R. Evid. 703 (emphasis added). Indeed, the *Daubert* court noted that experts are permitted to offer opinions "that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993).

Accordingly, Mr. Calef may properly give his opinion as to the Subject Vehicle's current defects based on his review of the repair orders for the Subject Vehicle, photographs of the Subject Vehicle, the vehicle inspections, and Plaintiff's testimony. Federal Rule of Evidence 703 permits opinion based on facts other than those Mr. Calef personally observed. BMW has not provided any authority or facts that warrant preventing Mr. Calef from forming his opinion based on those facts. This methodology is entirely proper. *See Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634 (W.D. Tex. 2006) (holding that an expert "could reasonably make this straightforward determination [that the defects could cause a leak in the bottles] based on an inspection of the photographs"); *United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. Ill. 2000) (finding that "Dr. DeHaan's reliance on reports, photographs, and third-party observations, which may not have been admissible into evidence, served as a reliable basis for his testimony…"); *Caldwell v. Cont'l Am. Ins. Co. (In re Caldwell)*, 350 B.R. 182, fn. 6 (Bankr. E.D. Pa. 2006) (personal examination of patient was not required for expert to give opinion testimony and evaluation of medical records is a reliable method); *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 788 (1981); *West v. Johnson & Johnson Prod., Inc.*, 174 Cal. App. 3d 831, 861 (1985).

Defendant's reliance on *Daubert*, moreover, is misplaced in that the court addressed only scientific expert testimony. *Id.* at fn. 8. In contrast, Mr. Calef's testimony is more appropriately characterized as specialized knowledge (in particular, focusing on diagnosing the existence of defects, not elucidating their underlying causes, a subject on which Mr. Calef does not opine).[3] Fed. R. Evid.

---

[3] BMW objects to Mr. Calef's conclusions as conclusory simply because BMW conflates the existence of the defect, on which Mr. Calef opines, with the

10

702. As such, the *Daubert* factors enumerated by Defendant are inapplicable to the field of automobile diagnostics, an area on which Mr. Calef is an expert.[4] As the U.S. Supreme Court ruled in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."[5]

Mr. Calef makes clear the distinction between using diagnostic procedures, which he does, and the scientific method, which he correctly notes is not necessarily applicable here:

> Q.  Okay.  Do you know what the scientific method is?
>
> A.  I do.
>
> Q.  Can you describe it to me?
>
> A.  It involves observation of the scenario, theorizing what the reasons are behind that scenario, constructing an

---

cause of the defect, a much more technical analysis that is of no relevance here. *See Oregel v. American Isuzu Motors, Inc.* 90 Cal. App. 4th 1094, 1102 n.8 (2001) (explaining that Song-Beverly does not require a consumer to prove the cause of the defect or failure, only that the consumer good "did not conform to the express warranty."). Here, Mr. Calef plainly relies on the vehicle repair history and his own professional experience to conclude that the Subject Vehicle did not conform to the express warranty. He need not provide more.

[4] This does not mean that the Court should abandon its gatekeeper role and simply admit all such testimony. Rather, this means that that the specific considerations elucidated in *Daubert* regarding scientific testimony based on the scientific method are not applicable here. BMW, in fact, acknowledges, correctly, that the Court's gatekeeping role under *Daubert* "applies to all expert testimony, not just scientific testimony." (MIL at 6:20-22 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147). BMW then, however, muddies the water by fixating on standards and issues relevant only to scientific testimony (*e.g.*, use of the scientific method), which are not applicable here.

[5] Similarly, the Supreme Court observed in *Daubert*, "the inquiry envisioned by Rule 702 is a flexible one." *Id.* at 595. As the appellate court noted in *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), courts "should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." (Emphasis added). *See also Daubert*, 509 U.S. at 588; *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988). The *Westberry* court explained that a "court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Id.*

---

11

**OPPOSITION TO BMW'S MOTION IN LIMINE**

1       experiment to either verify or just prove your theory,

2       conducting that experiment, analyzing the data.

3       Q.  Do you believe in using the scientific method?

4       A.  If it is properly used in a proper situation,  yes.

5       Doesn't apply here.

6       Q.  Why not?

7       A.  Because we used diagnostic procedures to diagnose

8       the vehicle.  We don't use scientific method unless there's

9       a situation where the diagnostic process doesn't work,

10       and then you go on and you can use the scientific method

11       to see if you can find a solution to whatever the problem

12       is. But in most cases, we're using standard diagnostic

13       procedures, and the scientific method isn't something we

14       need.

15 (Calef Tr. at 101:21-102:18.)

16       Thus, Mr. Calef need not employ the "scientific method" for his opinions

17 to be made admissible, as he focuses on diagnostics, not experimental testing and

18 the scientific method BMW misguides the Court when it suggests exclusion of

19 Mr. Calef's opinions is warranted because he "openly dismisses the scientific

20 method as having nothing to do with this case."[6] (MIL at 8:18-19.)[7]

21

22     [6] Likewise, BMW misguides the Court when it suggests exclusion is appropriate here because "testing is the core of the scientific method." (MIL at 9:7-8.) Reliance on the scientific method, however, is not required to testify as

23 an expert in the federal district courts.

24     [7] BMW also cites to the Ninth Circuit's opinion in *Claar v. Burlington Northern Railroad Company*, to support its contention that Mr. Calef's opinion is

25 unreliable. (MIL at 9:3-23.) BMW seeks to railroad Mr. Calef's methods and opinions as insufficient. However, the concern in *Claar* was whether it was error

26 for the trial judge to exclude expert witnesses when the experts failed to explain the reasoning or methods underlying their opinions, and the experts admitted to

27 being insufficiently familiar with the field to render a proper diagnosis. *Claar v. Burlington Northern Railroad Company*, 29 F.3d 499, 502-03 (9th Cir. 1994 ).

28 The exact opposite is the case here: Mr. Calef has provided his reasoning and

12

---

**OPPOSITION TO BMW'S MOTION IN LIMINE**

### C.    Mr. Calef's Opinions Are Relevant and Reliable

Mr. Calef's testimony will help the jury understand the evidence presented in this case and will assist the jury in deciding this case. *See* Fed. R. Evid .702. BMW's claim that his testimony will cause confusion lacks merit and is unsupported. And BMW completely underestimates the jury. There is no reason to assume that the jury will not understand Mr. Calef's testimony.[8]

Likewise, Mr. Calef's testimony will not waste time, as he will help the jury understand the evidence, including the repair orders and photographs. Again, his testimony will help show the jury that BMW was unable to conform the Subject Vehicle to its applicable warranties. *See Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 135 (1995). Additionally, his testimony will help the jury understand that BMW failed to correct the Subject Vehicle's defects after a reasonable number of attempts and that the defects with the Subject Vehicle substantially impair the use, value, and safety of the vehicle. Accordingly, his testimony is relevant and admissible and exclusion of his testimony under Federal Rule of Evidence 403 would be inappropriate. Fed. R. Evid. 401; Fed. R. Evid. 702.

As shown below, BMW does not provide any rational basis for excluding the opinions provided in his expert Report.

---

methods. Mr. Calef goes to the extent of providing an explanation to where Defendant went wrong with their diagnosis and testing. Mr. Calef is extremely familiar with the field to provide his opinions. And Mr. Calef has done so.

Moreover, Mr. Calef is under no obligation to use the "scientific method," which was at issue in *Claar*. Rather, an expert may base his opinions facts, data, or opinions presented to him out of court. *See* Fed. R. Evid, 703.

[8] Any claim by BMW that Mr. Calef's testimony cannot be tested is baseless. Among other things, his opinion will be tested through cross-examination at trial. *Daubert*, 509 U.S. at 598; *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence); *E. Tenn. Natural Gas Co. v 7.74 Acres*, 2007 U.S. App. LEXIS 11991 (4th Cir. 2007).

13

As to Mr. Calef's first opinion, that Plaintiff suffered various problems/defects with the Subject Vehicle, BMW complains that because he based his opinion on his review of the invoices, because he never drove the Subject Vehicle, and because Mr. Calef concluded that Plaintiff brought his vehicle in for service repeatedly for each of these defects, his opinion should be excluded. (*See* MIL at 4:2-5:1.) To the contrary, Mr. Calef offered his opinions based on his review of the Subject Vehicle's repair history, Plaintiff's testimony (including his representation that his vehicle experienced the defects identified in the vehicle repair history), his review of vehicle photos and videos, his attendance at the vehicle inspections, and various other sources that he may properly consider.[9]

As to Mr. Calef's second opinion, that certain problems continue to exist for the Subject Vehicle, BMW objects because Mr. Calef based his opinion, in part, on Plaintiff's representations, and because Mr. Calef did not drive the vehicle. (MIL at 5:2-9.) Again, this is not a basis to exclude his opinion. Mr. Calef is entitled to rely on these sources, including Plaintiff's representations, and he need not drive the vehicle in order to provide his opinion on the existence defects therein.

As to Mr. Calef's third opinion, that BMW failed to properly diagnose and repair the Subject Vehicle, BMW claims that Mr. Calef's opinion is not anchored in fact. (MIL at 5:11-21.) Mr. Calef, however, expressly bases his opinions on the repair orders and invoices, which showed that BMW technicians had "repeatedly misdiagnosed defects, used improper diagnostic procedures and ignored clear indications of ongoing concerns." (Expert Report at 3 (Opinion No. 3, Reasons).)

---

[9] BMW routinely maintains that a vehicle's vehicle repair history is the only relevant consideration its own employees or contractors consider when evaluating repurchase requests under Song-Beverly, which necessarily implicates the issues on which Mr. Calef opines. It is unclear, then, why such evidence would be insufficient for an expert to opine on essentially the same here.

14

**OPPOSITION TO BMW'S MOTION IN LIMINE**

He then provides context for this based on his experience. To the extent BMW believes such an opinion is problematic, it is entitled to cross-examine Mr. Calef at trial. The evidence, however, is admissible.[10]

As to Mr. Calef's fourth opinion, that Plaintiff provided BMW a reasonable number of attempts to repair the Subject Vehicle, BMW simply concludes that it is within the Court's discretion as to whether testimony on this would be admissible. (MIL at 5:22-6:5.) Certainly, Plaintiff agrees with this and acknowledges the Court's role as gatekeeper of expert testimony. This testimony, however, is uncontroversial, well supported, and should be admitted.

As to Mr. Calef's fifth opinion, that the unrepaired problems were covered by the Subject Vehicle's warranty, BMW claims that Mr. Calef's observation that there did not appear any reason to believe that Plaintiff had "tampered with, misused or abused the vehicle" was a "non-sequitur." (MIL at 6:6-11.) BMW, however, fails to acknowledge certain key points. As an initial matter, BMW's point is irrelevant, insofar as the fact the BMW covered these repairs under warranty is an admission there were defects that needed repair. *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 (2005) ("By attempting to repair [these problems] under warranty, [Defendant] admitted the defective nature of these conditions."); *Milicevic v. Mercedes-Benz USA, LLC*, 256 F.Supp.2d 1168, 1179 (D. Nev. 2003) ("Defendants' performance of all repairs and attempted repairs under the warranty provisions constitutes an admission that all the

---

[10] BMW claims, "Calef simply asserts that because Plaintiff's concerns could not be duplicated establishes that BMW NA failed to properly diagnose and repair the subject vehicle. However, Calef has not anchored his belief in fact, instead he merely uses this 'expert report' as an opportunity to prolificate and chastise BMW NA by claiming that 'in most cases' and not relying on THIS case, that 'the mechanic did not spend sufficient time and/or used proper diagnostic procedures to find the problem.'" (MIL at 5:17-21 (citing Calef Expert Report).) But Mr. Calef explains exactly the methodology he uses when evaluating concerns that ostensibly could not be duplicated. (Calef Tr. at 65:10-70:4.) Accordingly, BMW is wrong to assert that this opinion is based on speculation or is in any way conclusory.

**OPPOSITION TO BMW'S MOTION IN LIMINE**

conditions testified to, during the relevant period, came within Defendants' warranties and that the failure to repair or bring the conditions into conformity constitutes a breach of those warranties."); *Jensen*, 35 Cal. App. 4th at 137 ("As we noted, each repair order was stamped with the word, 'Warranty.' If the car was covered by BMW's express warranty for purposes of repair, a jury could infer it was covered by the express warranty for purposes of refund or replacement.") (applying to Song-Beverly claim). Moreover, Mr. Calef's observation that there was no tampering or misuse is relevant insofar as tampering or misuse is a primary exclusion from warranty coverage, so the fact that such conditions were not present suggest the repairs should have been made under warranty.

As to Mr. Calef's sixth, seventh and eighth opinions, that the Subject Vehicle's use, value, and safety, respectively, have been substantially impaired, BMW does not offer a direct challenge to these opinions, so they should be admitted. BMW does state that "[w]hether a concern substantially impairs use, value, or safety, is matter of fact for the jury." (MIL at 4:23-24 (*citing Lundy v. Ford Motor Company*, 104 Cal. Rptr. 2d 545, 548 (2001)). This, however, is certainly not a basis for excluding expert opinions.

Ultimately, each of the eight opinions set forth in Mr. Calef's Expert Report are relevant, reliable, and Mr. Calef should be provided the opportunity to testify as to these opinions.

### D.    BMW's Motion *In Limine* Goes To The Weight, Not The Admissibility, Of Mr. Calef's Opinions

To the extent BMW may have identified certain aspects of Mr. Calef's opinions that are based in part on incomplete or questionable facts, or which tend towards appearing conclusory, Mr. Calef's report and testimony are still admissible, because such critiques go the *weight* a jury should afford that testimony, not its *admissibility. See, e.g., Sitrick v. Dreamworks, LLC*, No. CV 03-4265-SVW

16

**OPPOSITION TO BMW'S MOTION IN LIMINE**

(AJWx), 2006 U.S. Dist. LEXIS 97312, at *69 (C.D. Cal. July 20, 2006) ("To the extent Dr. Vacroux's statements in his expert report are relevant to the Court's analysis, the Court addresses allegations that the statements are conclusory when considering how much weight, if any, to accord Dr. Vacroux's statements); *Perez v. Seafood Peddler of San Rafael, Inc.*, No. 12-cv-00116-WHO, 2014 U.S. Dist. LEXIS 84575, at *20 (N.D. Cal. June 20, 2014) ("While his expert report is conclusory and his deposition testimony is not unassailable, he may be challenged through cross-examination. But exclusion on this record is inappropriate."); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 U.S. Dist. LEXIS 134029, at **55-56 (N.D. Cal. Jan. 27, 2009) ("Hynix argues that Mr. Murphy's opinion was too conclusory to constitute sufficient evidence on which the jury could base its verdict. Such conclusory opinion testimony is generally permitted at trial because of the opportunity to cross-examine the expert."). BMW will have the opportunity to cross-examine Mr. Calef at trial, and it can there probe Mr. Calef's opinions further (and notably, it could very well have done the same prior to trial by noticing Mr. Calef's deposition to address its objections, but BMW declined to do so); *United States v. Soulard*, 730 F.2d 1292 (9th Cir. 1984) (complaint about lack of personal involvement went to weight, not admissibility); *Figueroa v Boston Sci. Corp.*, 254 F. Supp. 2d 361, 366 (S.D.N.Y. 2003) (complaint that expert did not rule out other causes went to the weight, not the admissibility, of testimony). Weighing the evidence is the function of the jury. *Golod v. Hoffman La Roche*, 964 F. Supp. 841, 859 (S.D.N.Y. 1997); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457 (S.D.N.Y. 2007) (complaint about methodology went to weight, not admissibility).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff urges this Court to deny BMW's Motion *in Limine*.

17

**OPPOSITION TO BMW'S MOTION IN LIMINE**

1 | Dated: May 22, 2018

Respectfully submitted,
EcoTech Law Group, P.C.

By: /s/ DARA TABESH
Dara Tabesh, Esq.

**OPPOSITION TO BMW'S MOTION IN LIMINE**