UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE MOTIONS *IN LIMINE* [39–42, 46–48, 51, 57, 74, 77]**

Defendant BMW of North America, LLC ("BMW") filed five motions *in limine* ("MIL"), including one *Daubert*[1] motion. [Doc. ## 39–42, 51.] Plaintiff Abraham Forouzan filed four MILs, including one *Daubert* motion. [Doc. ## 46–48, 57.] Both sides submitted supplemental briefing as to BMW's MIL No. 1. [Doc. ## 74 ("Pl's Supp'l Br."), 77 ("BMW's Supp'l Br.").] The Court has considered the parties' moving papers and now renders its ruling.

I.
DISCUSSION

A.   BMW MIL No. 1 [Doc. # 51]

BMW seeks to exclude any subjective or opinion testimony by Plaintiff or his witnesses that "the use, value, or safety of the subject 2015 BMW Z4 [(the "Subject Vehicle")] has been substantially impaired," as well as "any evidence referring to the California Song-Beverly Consumer Warranty Act as the 'Lemon Law' or the Subject Vehicle as a 'Lemon.'" BMW MIL 1 at 1. BMW moves on the grounds that such testimony constitutes a legal conclusion that creates the danger of unfair prejudice and is misleading under Federal Rule of Evidence 403, neither Plaintiff nor his son are qualified experts, and the testimony is irrelevant because "substantial impairment" is determined under an objective reasonable person standard. *See Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001) ("Whether the impairment is substantial is determined by an objective test, based on what a reasonable person would understand to be a defect. This test is applied . . . within the specific circumstances of the buyer." (citations omitted)).

Lay witnesses, once the proper foundation is laid, may testify about "the [perceived] nature of the defects; the cost and length of time required for repair; whether past repair attempts have

---
[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 2 of 15 |

been successful; the degree to which the goods can be used while repairs are attempted; [inconvenience to buyer]; and the availability and cost of alternative goods pending repair." *Lundy*, 87 Cal. App. 4th at 478 (second alteration in original) (describing considerations for the trier of fact under the objective substantial impairment test). In practice, this means that the Subject Vehicle's primary driver may testify about the noises he heard emanating from the car or perceived problems with the car's acceleration while he was driving, for example, and how those issues affected his use of and comfort driving the car. The primary driver may not testify, however, about whether those alleged defects *actually* affected the Subject Vehicle's worth, its drivability, or its safety, because he has not been established as an expert. *See Gusse v. Damon Corp.*, No. SACV 05-1167 JVS (MLGx), 2007 WL 4440891, at *2 (C.D. Cal. Jan. 22, 2007). He may, however, testify as to his *personal perceptions* regarding these issues to the extent that a proper foundation has been laid for them.

      Plaintiff leased the Subject Vehicle, and his son was the vehicle's primary driver. Ex. A to Takahashi Decl. at 11:6–9 [Doc. # 51-1]. Plaintiff may therefore testify about the contract price of the lease and, in light of the issues he has had with the car, what he would have been willing to spend on a lease for such vehicle as opposed to the contract price of the lease. *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 22 (2007) (affirming jury verdict where plaintiff testified "the car was only worth $10,600 to her in its defective condition"). Plaintiff's son, as the primary driver, may testify about his first-hand experiences driving the car (*i.e.*, problems he observed, sounds he heard, whether he felt safe, etc.), and any other Plaintiff's witness that has experience driving the Subject Vehicle or observing its problems first-hand may provide percipient witness testimony about such experience so long as the basis for such testimony has been introduced. *See id.* ("[Plaintiff] cut her driving in half for fear the car was unsafe and would break down."); *Walzem v. DaimlerChrysler Corp.*, No. F044150, 2005 WL 375184, at *5 (Cal. Ct. App. Feb. 17, 2005) (unpublished) (car owner "testified to his reluctance to use the vehicle on out-of-town trips and that he would sometimes rent a car for use on such trips. He also testified that because of his reluctance to pass along a defective vehicle to another buyer, he was unable to sell the vehicle and obtain a replacement. [His wife]'s letter to [defendant manufacturer] expressed concern that she would not be able always to restart the car in time to avoid an accident"); *Shreidel*, 34 Cal. App. 4th 1242, 1250 (1995) ("Due to the intermittent problems, [plaintiff] avoided using her car for long trips, thereby reducing its usefulness and value to her. There is no question that a delay in shifting into first is similar to stalling, a dangerous situation on the highway. [Plaintiff] experienced panic when she could not shift into first gear. She felt as though she never had a new car. The problems were becoming worse as the car aged. [Plaintiff] had lost confidence in the car and attempted to replace it. The jury could determine that the value of the goods to this particular buyer was substantially impaired." (citation omitted)); *see also Khachatryan v. Toyota Motor Sales U.S.A. Inc.*, 2009 WL 9537646, at *3 n.2 (C.D. Cal. Aug. 5, 2009) ("The Court does not agree that there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 3 of 15 |

is a conflict between *Lundy* [announcing the objective standard] and *Schreidel* [*supra*]. A loss of confidence in the reliability of a vehicle based on objective facts is objective. However, these cases *would not justify testimony about the owner's fear or other subjective factors not tied to an objective foundation*." (emphasis added)).

So long as there is a basis for Plaintiff's witnesses to testify about the Subject Vehicle, the Court will permit such testimony. *See Khachatryan*, 2009 WL 9537646, at *3 ("Toyota seeks [an] order to bar [Plaintiff] and/or her experts from testifying with regard to the substantial impairment of her vehicle. As long as the testimony is received within the proper framework, there is no bar to such testimony."); *Gray v. Mazda Motor of Am.*, No. SACV 08-279 JVS (ANx), 2009 WL 10673335, at *3 (C.D. Cal. Feb. 6, 2009) (owner of vehicle may express an opinion as to its value so long as there is a basis for such testimony, and where owner testified that he never drove the car and had no opinion about diminution of value, owner had to make an offer of proof outside of the jury before providing such testimony).

As for references to "lemon" or "Lemon Law," the Court agrees that referring to the Subject Vehicle as a "lemon" or using that descriptor in connection with the Subject Vehicle or the litigation more broadly will improperly elicit emotions from the jury, confuse the issues, or mislead the jury. *See Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1211 (2005) ("Even a vehicle with a defect is not necessarily a lemon. A 'nonconformity' requiring the vehicle's refund or replacement under [California] law must substantially impair[] the use, value, or safety of the new motor vehicle.' Not every customer complaint about a new car, or even every valid customer complaint, rises to that level. And customers and manufacturers frequently disagree about whether a defect has been repaired or a reasonable number of attempts have been made." (second alteration in original) (citation omitted) (quoting Cal. Civ. Code § 1793.22(e)(1)); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 112, 129 (1995) (trial court excluded references to the term "lemon" in describing the subject vehicle). The Court will not preclude the parties from using the term "Lemon Law" when referring specifically to the Song-Beverly Consumer Warranty Act. *See Jensen*, 35 Cal. App. at 130 ("[T]he Act is commonly referred to as the 'Lemon Law.' We are unpersuaded by the suggestion the term is inflammatory and prejudicial when used interchangeably with the name of the Act.").

BMW's MIL 1 is therefore **DENIED in part and GRANTED in part**.

**B.     BMW MIL No. 2**

BMW moves to exclude from trial any argument or testimony about concerns never presented for repair or presented for repair only once. BMW points specifically to four issues:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | | Date | June 27, 2018 |
| Title | *Abraham Forouzan v. BMW of North America, LLC, et al.* | | Page | 4 of 15 |

(1) check control message allegedly concerning the gear position to indicate that the "car wash mode" was not working,[2] observed for the first time on December 7, 2017 (never presented); (2) oil leak presented on December 26, 2017 (presented once and repaired); (3) DCS sensor presented on February 22, 2016 (presented once and repaired); and (4) tire pressure monitor presented on February 22, 2016 (presented once and repaired).

With regard to claims brought under section 1783.2(d), the Song-Beverly Act "does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208 (2003). Yet, the Song-Beverly Act is to be construed broadly consistent with its remedial and consumer-protection purpose. *See Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 800–801 (2006). Interpreting this section of the Act, the *Robertson* Court explained that "nonconformity" as used in the statute is "broad enough to encompass the entirety of the problem" with the vehicle such that a plaintiff need not present precisely the same issue for repair multiple times to be entitled to the Act's relief. *Id.*; *see also id.* at 803 ("[A] breach of obligations arising under the Song-Beverly Act may arise under many diverse situations. Suffice it to say that the critical question of whether a reasonable number of attempts were provided, thereby allowing the consumer to forego further repair attempts and pursue a 'replace-or-repurchase' remedy, depends upon the facts and circumstances of each case.").

Additionally, claims for breach of implied warranty do not "require[] the seller [to] be given an opportunity to repair." *Kacsuta v. Lenovo (U.S.) Inc.*, No. SACV 13-316 CJC (RNBx), 2013 WL 12126775 at *1 n.2 (C.D. Cal. July 16, 2013) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 404 (2003))) (collecting cases). And where the manufacturer or repair facility takes more than 30 days to repair or service an issue, the plaintiff may bring a claim for violations of section 1793.2(b) of the Act even if the issue is ultimately repaired or the issue presents only once. *See, e.g.*, *D.L. Edmonson Selective Serv. Inc. v. LCW Auto. Corp.*, 689 F. Supp. 2d 1226, 1234 (C.D. Cal. 2010). Plaintiff brings five claims, including breach of the implied warranty and violation of section 1793.2(b). *See* Compl. [Doc. # 1-1].[3] Accordingly, the number of times the issues were presented for repair, if ever, is irrelevant to those claims.

---

[2] BMW did not present any evidence about the gear position alert's connection to a car wash mode malfunction. BMW explained at the MIL hearing, however, that it did not seek to exclude from evidence at trial complaints about the Subject Vehicle's "transmission range" or "parking lot cable." Hr'g Tr., May 29, 2018, 2:00 PM. Rather, BMW seeks to exclude only documents, testimony, or arguments about the check control message for the car wash mode "because that never came up until the vehicle inspection" on December 7, 2017. *Id.*

[3] Plaintiff also contends that his breach of express warranty claim, brought under California Civil Code sections 1791.2(a) and 1794, may be based on only a single repair attempt under *Rose v. Chrysler Motors Corp.* Although the Court there found that "[a]n unsuccessful effort to remedy the defects renders the seller liable on his warranty[] and the buyer is not bound to allow him a second opportunity," that case did not deal with the Song-Beverly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | | Page | 5 of 15 |

The Court now turns briefly to the four repair issues presented in BMW's MIL. As the party seeking admission of these repair issues, Plaintiff bears the burden of proof to show their admissibility. *See In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010).

With regard to the check control message issue, Plaintiff argues that he presented the Subject Vehicle for repair in connection with this issue more than once, on November 4 and 27, 2015. The Repair Order document associated with the November 4, 2015 visit provides that Plaintiff complained the "transmission range N on display," and BMW inspected the transmission parking cable. *See* Ex. 2 to Santos Decl. [Doc. # 66-3]. The Repair Order document associated with the November 27, 2015 visit reflects a complaint that the "transmission range displays all the time" with an indicated "cause" of "cable." Ex. 3 to Santos Decl. [Doc. # 66-4]. Because neither of these two visits concern the gear position in connection with the Subject Vehicle's car wash mode, and because BMW stated on the record that it did not seek to exclude from evidence at trial complaints about the Subject Vehicle's "transmission range" or "parking lot cable," Plaintiff has not carried his burden to show the admissibility of complaints regarding the check control message in connection with the car wash mode. *See* note 2, *supra*. The Court therefore **GRANTS** this MIL insofar as it pertains to Plaintiff's section 1783.2(d) claim.

As for the December 2017 oil leak complaint, the Court's review of the record shows that the oil leak relates to at least the section 1793.2(d) claim. [*E.g.*, Doc. # 42-1 at 6 (leaking engine oil is one of the ongoing problems listed in Plaintiff's expert report).] The Court thus **DENIES** the MIL in connection with that issue. With regard to the February 2016 "DCS sensor" issue, Plaintiff has not shown that the DCS sensor issue is the subject of, or related to, the implied warranty or section 1793.2(d) claims. The Complaint alleges breach of warranty in connection with several defects, none of which appear to relate to the DCS sensor issue presented for repair only once in February 2016. *See* Compl. at ¶ 9; Hr'g Tr., May 29, 2018, 2:00 PM (Plaintiff's counsel pointing the Court to paragraph 9 of the Complaint, which supposedly "listed all of the defects or issues that occurred with regards to th[e] [Subject] [V]ehicle"). Although this Court agrees that under *Robertson*, an actionable nonconformity may encompass a defect that is broader than a particular issue presented for repair when that particular issue is in fact related to a larger problem, it was Plaintiff's burden to show how the DCS sensor issue relates to the Subject Vehicle's alleged nonconformities under section 1793.2(d). *See* 144 Cal. App. 4th at 801. Plaintiff has not carried his burden. Additionally, because the DCS sensor issue was "ready" within 30 days of being presented for repair, it cannot support Plaintiff's section 1793.2(b) claim. *See* Ex. B to Takahashi Decl. [Doc. # 39-2] (repair order "opened" on February 22, 2016, and "ready" on March 7, 2016). The Court thus **GRANTS** this MIL in connection with the DCS sensor issue.

---

Act at all. *Rose*, 212 Cal. App. 2d 755, 763 (1963). This Court therefore declines to follow it. Furthermore, express warranty claims brought pursuant to section 1794 are subject to section 1793.2(d). *See* Cal. Civ. Code § 1794(b).

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 6 of 15 |

Finally, Plaintiff has not shown that the tire pressure warning light issue was presented for repair more than once. *See also* Hr'g Tr., May 29, 2018, 2:00 PM (Plaintiff's counsel admitting the issue was presented for repair only once). Nor has Plaintiff shown that the warning light issue is the subject of, or related to, any alleged defects that are the subject of the implied warranty or section 1793.2(d) claims. Because the issue was "ready" within 30 days of being presented for repair, it cannot support Plaintiff's section 1793.2(b) claim. *See* Ex. B to Takahashi Decl. [Doc. # 39-2] (repair order "opened" on February 22, 2016, and "ready" on March 7, 2016). The Court therefore **GRANTS** the MIL in connection with the tire pressure warning light issue.

C.   BMW's MIL No. 3 [Doc. # 40]

BMW seeks to exclude argument or testimony that repair orders alone substantially impair a vehicle's value. Plaintiff appears to argue in opposition that this MIL should be denied because a car's repair history affects the car's resale price. While this may be the case, it is irrelevant to the inquiry under section 1793(d)(2) of the Song Beverly Act. Rather, Plaintiff bears the burden of proving three elements: (1) the vehicle suffered a nonconformity, covered by the express warranty, and *that nonconformity* substantially impaired the vehicle's use, value, or safety (known as the "nonconformity" element); (2) the vehicle was presented to an appropriate facility for repair (the "presentation" element); and (3) the manufacturer or his representative failed to repair the nonconformity after a reasonable number of attempts (the "failure to repair" element). *See Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001).

Argument that the repair orders alone substantially impair the Subject Vehicle's value risks confusing the issues and misleading the jury because it is the nonconformity—not the fact that the Vehicle has undergone repairs—that must cause substantial impairment. The Court therefore **GRANTS** BMW's MIL No. 3.

D.   BMW's MIL No. 4 [Doc. # 41]

BMW seeks to prohibit Plaintiff from introducing as evidence at trial his subjective consumer expectations about unspecified "design and usage" of the Subject Vehicle as proof of nonconformities. BMW MIL 4 at 3. In support, BMW cites extensive case law on the rule that alleged design defects are irrelevant to express warranty claims where the warranty at issue covers only defects in materials and workmanship. *See id.* at 3–6 (collecting and discussing cases). Plaintiff counters that his and his son's testimony about their expectations of vehicle dependability and their intended use of the Subject Vehicle are directly at issue because the jury must determine whether the alleged nonconformity substantially impaired the vehicle's use, value, or safety under the *Lundy* test. The Court tends to agree with Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 7 of 15 |

Because "express warranties covering defects in materials and workmanship exclude defects in design" under California law, the Court **GRANTS** this MIL insofar as it is aimed at testimony about design defects. *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013). Insofar as the MIL is otherwise aimed at precluding Plaintiff from introducing any evidence about his subjective expectations of the Subject Vehicle, untethered to alleged design defects, the Court **DENIES** the MIL **without prejudice** to renewal at trial in the form of a more tailored objection to specific proffered testimony.

E.      BMW's *Daubert* Motion (MIL No. 5) [Doc. # 42]

BMW seeks to exclude Plaintiff's expert, Dan Calef, from testifying at trial based on his qualifications, the relevance of his opinions, and the reliability of his methods. The proponent of the expert carries the burden of showing his admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

    1.      Qualifications

The Court concludes that Calef is qualified to opine on the alleged defects in the Subject Vehicle. Calef's resume shows that he is currently a "Lemon Law" consultant (since 1988) and automotive diagnostician (since 2000), and he has decades of experience in the automotive industry, having worked in an auto repair facility as a technician and manager, a high school and college instructor in automotive subjects, and even a claims manager for an automotive warranty company. *See* Ex. A to Takahashi Decl. at 10–12 [Doc. # 42-1]. Moreover, he has a bachelor's degree in "Career and Technical Education," has continued his education with over 1,000 hours in automotive courses, boasts several automotive-related certifications, and has been an expert witness in over 240 cases in Southern California. *Id.* at 12–19.

Although BMW argues in its MIL that Calef has admitted to a lack of specialized training or BMW Z4-specific experience, BMW has not presented, or even cited, any evidence in support of this assertion. Plaintiff submitted excerpts of Calef's deposition testimony that show while he has never worked for a BMW dealer or received training from BMW about BMW vehicles, he has received training specific to BMW vehicles and their systems. *See* Ex. 1 to Tabesh Decl. ("Calef Depo.") at 86:23–87:5 [Doc. # 68-2]. In any event, the Court concludes that Calef's resume shows he has sufficient expertise in the automotive field and diagnostics to present expert testimony, as discussed. The Court **DENIES** this MIL insofar as it is premised on Calef's expert qualifications.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 8 of 15 |

**2. Relevance**

BMW argues that Calef has not established a link between the Subject Vehicle's allegedly defective components and Plaintiff's concerns, and his testimony therefore has no probative value. Under *Daubert*, "relevance means that the evidence will assist the trier of fact to understand or determine a fact in issue. The evidence must logically advance a material aspect of the party's case." *Cooper*, 510 F.3d at 942. The Song-Beverly Act "requires only that [plaintiff] prove the car did not conform to the express warranty," and a consumer is not obligated to introduce expert testimony that proves the cause of a defect. *Oregel*, 90 Cal. App. 4th at 1102 n.8. Accordingly, Calef's expert opinion does not lack probative value simply because he does not explain the cause of the alleged nonconformities. The Court **DENIES** this MIL insofar as it is premised on Calef's failure to establish a cause of the alleged defect.

**3. Reliability**

"Testimony is considered reliable if it 'relate[s] to scientific, technical or other specialized knowledge' and 'does not include unsubstantiated speculation and subjective belief.'" *Rutenberg v. Ortho-McNeil Janssen Pharmaceuticals, Inc.*, No. CV 12-08344 DSF (FFMx), 2017 WL 5634986, at *4 (C.D. Cal. March 27, 2017) (quoting *Cooper*, 510 F.3d at 942). BMW argues Calef's expert opinion is unreliable because his report does not satisfy the four scientific foundation factors outlined in *Daubert*, *i.e.*, they "are not supported by scientifically valid reasoning, methodology, testing or peer review." BMW MIL 5 at 1; *see Daubert*, 509 U.S. at 592–94.

Because Calef bases his opinions on his specialized rather than scientific knowledge, the four *Daubert* reliability factors are less helpful to the Court in determining reliability. Ex. A to Takahashi Decl. at 10 [Doc. # 42-1]; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (observing that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience"). According to his Expert Report, Calef bases his opinions on his observations during two vehicle inspections, the warranty booklet at issue, the Subject Vehicle's lease contract, repair orders and invoices related to the Subject Vehicle's repairs, the pleadings in the case, both sides' discovery documents, video recordings of the Subject Vehicle, photographs of the Subject Vehicle (including photos taken during the inspections), and deposition testimony. Ex. A to Takahashi Decl. at 4–5. An expert may provide reliable opinion testimony through a review of the evidentiary records and the pleadings at issue. *See Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed." (emphasis added)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 9 of 15 |

As such, the Court will not exclude Calef's testimony due to nonconformity with the science-based reliability factors announced in *Daubert*.

BMW points to other deficiencies in Calef's expert report that suggest unreliability. Most troubling is the seemingly generalized and nonspecific reasons behind Calef's expert opinions that encumber the Court's determination as to whether the testimony is substantiated. For example, Calef's first opinion enumerates the Subject Vehicle's problems, but the basis for such "opinion" is that the car's primary driver reports experiencing and seeking repairs for such problems. *See* Ex. A to Takahashi Decl. at 5–6. While an expert "can appropriately rely on the opinions of others," there must be other evidence to support that opinion and a demonstration in the record that the expert conducted an independent evaluation. *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (excluding in part expert's declarations for unreliability where expert parroted another expert's evaluation and did not conduct his own assessments). Plaintiff has not presented any evidence to substantiate Plaintiff's son's complaints about the Subject Vehicle. Moreover, Plaintiff's son is not an automotive expert, which makes suspect Calef's reliance on his complaints. *See id.* ("An expert's sole or primary reliance on the opinions *of other experts* raises serious reliability questions." (emphasis added) (collecting cases)).

Nonetheless, it appears from Calef's deposition testimony that he conducted a thorough review of the documents in this case, and his review cross-references and confirms Plaintiff's and his son's complaints of nonconformities. *See, e.g.*, Calef Depo. at 67:12–14 (reading from a repair order, "[c]ustomer states that [when] accelerating there [is] a metal-type noise under the car"), 68:5–15 (reading from document from same visit, "[n]oise verified. Left front seat top rattle accel and decel [sic] slow speed metal noise"). Calef's basis for his second opinion—the complained-of problems that still exist unrepaired—also indicates independent analysis. *See* Ex. A to Takahashi Decl. at 6 ("During the 12-7-2017 inspection, I was able to verify some of these problems which are also documented photographically. Photographs taken after the last repair attempt and after the BMW vehicle inspection verify the presence of current transmission defects. The current presence of the noises is verified in Mr. Fourouzan's deposition.").

Similarly, while Calef's third opinion and its underlying basis appear conclusory and circular, his deposition testimony appears to cure such deficiencies. *Compare id.* ("Defendant's dealerships did not make a reasonable effort to diagnose and repair the unrepaired concerns" because the "repair orders and invoices show that [BMW] failed to properly diagnose and repair [Plaintiff's son's] concerns. Technicians repeatedly misdiagnosed defects, used improper diagnostic procedures and ignored clear indications of ongoing concerns. The fact that a mechanic is unable to duplicate a problem does not mean that the problem does not exist. In most cases, it means that the mechanic did not spend sufficient time and/or used proper diagnostic procedures to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 10 of 15 |

find the problem."), *with* Calef Depo. at 66:8–16 ("I go back and I look at how much effort was made to find the problem. For instance, there are times where they say, test-drove it, couldn't find any problem . . . . You go to the accounting copy, you look, they have zero time into that line. That's not a no problem found, because they didn't make any effort, they spent no time."). Calef's method of determining the reasonableness of BMW's efforts to diagnose and repair the Subject Vehicle's alleged defects appears to consist of an independent and in-depth review of the repair records and BMW's internal documents in order to determine to, for example, whether the mechanics made efforts to find the complained-of problem and how much time they expended, if any, on such efforts.

"[Q]uestions as to whether an expert has applied a particular methodology correctly typically go to the weight of the evidence," and this is not a case where the expert's opinions are of limited value because of his failure to apply any methodology. *Cholakyan*, 281 F.R.D. at 547. Rather, as explained, Calef forms his opinions based on a methodology, and BMW will be able to challenge his methods and conclusions through cross-examination. *See Perez v. Seafood Peddler of San Rafael, Inc.*, No. 12-cv-00116-WHO, 2014 WL 2810144, at *5 (N.D. Cal. June 20, 2014) (finding movant's challenges to expert's testimony has "some force, but all of their cricisms [sic] may be explored on cross-examination").

Although Calef's expert report presents a close-call as to reliability, Plaintiff has carried his burden of showing the admissibility of Calef's expert testimony. The Court thus **DENIES** BMW's *Daubert* motion insofar as it is based on a reliability challenge. Defendants are certainly free to cross-examine Calef on his opinions.

F.     Plaintiff's MIL No. 1 [Doc. # 46]

Plaintiff first seeks to preclude the defense from introducing any testimony, argument, or documents referring or relating to Plaintiff's ability to recover attorney's fees on relevance grounds. The Court agrees that Plaintiff's right to recover attorney's fees if he prevails in the action has no tendency to make any of the elements of Plaintiff's claims more or less probable. *See* Fed. R. Evid. 401.

The Court **GRANTS** this MIL.

G.     Plaintiff's MIL No. 2 [Doc. # 47]

Plaintiff asks the Court to prohibit the defense from introducing any testimony about BMW's arbitration program. Plaintiff argues that BMW's Rule 26 Disclosures did not identify

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 11 of 15 |

any witnesses necessary to support argument based on the arbitration program, and such argument or testimony should be excluded under Federal Rule of Civil Procedure 37(c); BMW's arbitration program is irrelevant; and information about BMW's arbitration process would be misleading, confusing, and risk undue prejudice under Rule 403.

Damages under the Song-Beverly Act vary. *See* Cal. Civ. Code § 1794; *Jernigan v. Ford Motor Co.*, 24 Cal. App. 4th 488, 491–93 (1994) (exploring the damages scheme under the statute). A plaintiff's damages may include "the rights of replacement or reimbursement" under section 1793.2(d). *Id.* at § 1794(b). If the defendant's "failure to comply with any obligation under [the Act] or under an implied or express warranty or service contract" was willful, plaintiff may recover a civil penalty up to two times the amount of actual damages, except "with respect to a claim based solely on a breach of an implied warranty." *Id.* at § 1794(a), (c). For violations of section 1793.2(d)(2)—one of Plaintiff's claims here—the plaintiff may recover a civil penalty of no more than two times the amount of damages, regardless of the defendant's willfulness. *Id.* at § 1794(e)(1). If the defendant "maintains a qualified third-party dispute resolution process" ("QTRP") that meets statutory requirements, however, the plaintiff may not recover civil penalties under section 1794(e). *Id.* at § 1794(e)(2). A plaintiff cannot recover civil penalties for willful and non-willful conduct under subsections (c) and (e) in connection with the same violation. *Id.* at § 1794(e)(5).

Plaintiff seeks civil penalties in connection with his claims under sections 1793.2(a)(3), 1793.2(d), and 1791.2(a). Compl. at ¶¶ 13, 15, 23, 27. Plaintiff also alleges that BMW does not maintain a QTRP. *Id.* at ¶ 14. BMW's maintenance of an arbitration program that qualifies as a QTRP under section 1794(e) is therefore neither irrelevant nor confusing, misleading, or unduly prejudicial. It is squarely at issue in this case.

Additionally, it appears that BMW properly disclosed its relevant witness, Jose Conde, whom Plaintiff deposed and whom BMW has placed on the witness list. *See* Doc. # 52. According to BMW, Plaintiff declined to ask Conde about BMW's arbitration program during his deposition, but Conde is prepared to testify at trial about the program. Accordingly, Federal Rule of Civil Procedure 37 does not preclude BMW from introducing testimony or argument about its arbitration program at trial.

The Court **DENIES** Plaintiff's MIL No. 2.[4]

---

[4] Since the hearing on the MILs, BMW has filed a motion for summary judgment in connection with the existence of a QTRP. [Doc. # 76.] The outcome of the MSJ may affect this ruling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | *Abraham Forouzan v. BMW of North America, LLC, et al.* | Page | 12 of 15 |

**H.   Plaintiff's MIL No. 3 [Doc. # 48]**

Plaintiff seeks to prohibit BMW and its counsel from introducing any argument or testimony that refers or relates to the parties' previous settlement negotiations, including a Rule 68 Offer of Judgment, under Federal Rule of Evidence 408.  BMW opposes the MIL only as to "pre-suit discussions including [BMW's] response to the repurchase demand from [P]laintiff's son" because its response to that request allegedly demonstrates a lack of willfulness.  Defs' MIL 3 Opp'n at 1 [Doc. # 60] (citing *Kwan v. Mercedes-Benz of N. Am.*, 23 Cal. App. 4th 174, 185 (1994) ("[A] violation is not willful if the defendant's failure to replace or refund was the result of a good faith an reasonable belief the facts imposing the statutory obligation were not present.  This might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty . . . .")).  Before filing suit, Plaintiff's son requested that BMW repurchase the Subject Vehicle.  *See* Ex. 1 to Stuhlbarg Decl. at 1 [Doc. # 61 at 6].  In response, BMW obtained the Subject Vehicle's repair history, communicated with Plaintiff's son during the process, and ultimately declined to repurchase the vehicle but offered a $2,500 "owner loyalty offer" to be put toward a new lease or purchase.  *Id.* at 4–8 [Doc. # 61 at 9–13].

"[O]ffer[s] . . . [of] valuable consideration in compromising or attempting to compromise the claim" are not admissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.  Plaintiff's son's repurchase request and BMW's process in response do not appear to fall under Rule 408's purview, and BMW's conduct is directly at issue in Plaintiff's claims for willful violations of the Song-Beverly Act.  *See id.* Advisory Committee Notes to 1972 Amendment (illustrative example of admissible offers outside Rule 408's scope include "negativing a contention of lack of due diligence in presenting a claim").

The Court **GRANTS** Plaintiff's MIL No. 3, except with regard to the repurchase demand and BMW's response thereto.

**I.   Plaintiff's *Daubert* Motion (MIL No. 4) [Doc. # 57]**

Finally, Plaintiff seeks to prevent BMW's expert witness, Jose Gijalva, from testifying at trial.  Plaintiff argues that Grijalva's expert report does not satisfy Federal Rule of Civil Procedure 26's standards; BMW failed to produce materials upon which Grijalva relied in reaching his opinion; and his opinions are unreliable because they are based on insufficient facts or data, and they are not the product of reliable methods.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | | Page | 13 of 15 |

### 1. Rule 26 Requirements

Rule 26(a)(2)(B)(i) requires the disclosure of an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Plaintiff's MIL vastly understates Grijalva's expert report's specificity and analysis. Throughout the challenged opinions, Grijalva provides a basis for his opinion, including his own inspection and attempts to duplicate Plaintiff's concerns. *See* Ex. 1 to Santos Decl. at 5–11 [Doc. # 57-2]. The report thus satisfies Rule 26. The Court **DENIES** the motion insofar as it is based on noncompliance with Rule 26(a)(2)(B)(i).

### 2. Failure to Disclose

Plaintiff deposed Grijalva on May 14, 2018. Santos Decl. at ¶ 7 [Doc. # 57-1]. During his deposition, he testified that he had not withheld any documents and there were no documents he referenced when discussing his opinions that went unproduced. *Id.* at ¶ 9. At the end of the deposition, there was some confusion as to those materials Grijalva actually relied upon and those he disclosed as relied upon in his expert report. *See* Ex. 2 to Santos Decl. ("Grijalva Depo.") at 6–9[5] (back-and-forth on whether certain diagrams and videos were disclosed to Plaintiff). Ultimately, however, Grijalva clarified that all materials upon which he relied in preparing the expert report had been produced to Plaintiff. *See id.* at 11 ("Is there any diagram that you relied upon in preparing for your involvement in this case that has not been produced? – No, just what's in the owner's manual."), 11–14 (explaining that when Grijalva originally enumerated the materials relied upon in his report, he listed materials upon which he did not actually rely out of habit).

Based on the documents presented in support of this MIL, the Court cannot identify any failure to produce relevant documents.[6] The Court thus **DENIES** the motion insofar as it is based on BMW's alleged failure to produce such documents.

---

[5] These references refer to the PDF pagination of the exhibit because the deposition testimony is in rough draft form.

[6] In opposition to this MIL, BMW concedes that certain materials upon which Grijalva relied were not produced along with its timely expert disclosure on April 17, 2018. Ihara Decl. at ¶ 3 [Doc. # 62]; Stuhlbarg Decl. at ¶ 5 [Doc. # 62]. Specifically, Plaintiff emailed defense counsel on May 11, 2018, indicating that they had not received the expert file. Ex. A to Stuhlbarg Decl. [Doc. # 62]. Defense counsel immediately responded with the missing portions of that electronic file, and Plaintiff was able to review those materials in advance of Grijalva's deposition. Ex. C to Stuhlbarg Decl. [Doc. # 62]. The Court thus concludes that any failure to produce documents did not prejudice Plaintiff. In any event, Plaintiff does not mention this failure to disclose in its MIL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
| Title | Abraham Forouzan v. BMW of North America, LLC, et al. | Page | 14 of 15 |

### 3. Reliability

Plaintiff's reliability challenge is terse and appears to be based exclusively on his challenges to the report's compliance with Rule 26(a)(2)(B)(i). As the Court explained above in connection with BMW's *Daubert* motion, an expert may base his opinion on information he has been made aware of or personally observed. Fed. R. Evid. 703. Here, Grijalva's expert report demonstrates that he based his opinions on both. *E.g.*, Ex. 1 to Santos Decl. at 5–7 (providing in great detail Plaintiff's complaints of vehicle noises and BMW's technicians efforts to address the problem; giving an opinion about the noise complaints that is tethered to the repair visits; providing alternative causes of the noises; and detailing results of his own inspection and efforts to duplicate the issue). The Court's review of Grijalva's expert report shows that his methodology involved a review of available records, an inspection (which appears to include test drives), and independent analysis based on such review and inspection. As discussed above, this satisfies the reliability requirement.

In fact, Plaintiff's challenge is better characterized as disagreement with Grijalva's ultimate opinion. This is not the proper subject for a *Daubert* motion, and Plaintiff will have the opportunity to cross-examine Grijalva to reveal weaknesses in his process, if any. *See Cholakyan*, 281 F.R.D. at 543–44 ("These types of objections [which to less to the reliability of the expert's opinions than to defendant's disagreement with his conclusions and attack on his credibility as a witness] are not relevant to the Rule 702 analysis." (collecting cases)); *Perez*, 2014 WL 2810144, at *5 (defendant's criticisms best explored on cross-examination).

The Court thus **DENIES** the motion insofar as it is premised on the unreliable bases for Grijalva's opinions.

## II.
## CONCLUSION

In light of the foregoing, the Court rules on the parties' MILs as follows:

1. The Court **GRANTS in part** and **DENIES in part** consistent with this Order Defendant's MIL No. 1 [Doc. # 51];
2. The Court **GRANTS in part** and **DENIES in part** consistent with this Order Defendant's MIL No. 2 [Doc. # 39];
3. The Court **GRANTS** Defendant's MIL No. 3 [Doc. # 40];
4. The Court **GRANTS in part** and **DENIES in part** consistent with this Order Defendant's MIL No. 4 [Doc. # 41];

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-3875-DMG (GJSx) | Date | June 27, 2018 |
|---|---|---|---|
| Title | *Abraham Forouzan v. BMW of North America, LLC, et al.* | Page | 15 of 15 |

    5.    The Court **DENIES** Defendant's MIL No. 5 (*Daubert* motion) [Doc. # 42];
    6.    The Court **GRANTS** Plaintiff's MIL No. 1 [Doc. # 46];
    7.    The Court **DENIES** Plaintiff's MIL No. 2 [Doc. # 47];
    8.    The Court **GRANTS** Plaintiff's MIL No. 3 [Doc. # 48] except with regard to the repurchase demand and BMW's response thereto; and
    9.    The Court **DENIES** Plaintiff's MIL No. 4 (*Daubert* motion) [Doc. # 57];

**IT IS SO ORDERED.**